EARLY W. THRASHER, *et al.*, plaintiffs in error, *vs.* ABNER M. PARTEE and wife, defendants in error.

When *cestui que trusts* averred that the trustee had, with the trust fund, bought lands, took title therefor in his own name and mortgaged them to T. for loaned money, who was about to sell them under his mortgage *fi. fa.*, and obtained injunction against such sale, and T., in his answer, denied all notice or knowledge of any trust, and swore that the transaction by him was *bona fide*, and upon a valuable consideration: *Held*, that though the bill should not have been dismissed on motion, still, the injunction should have been dissolved.

Equity. Motion to dissolve injunction. Decided by Judge VASON. Morgan Superior Court. September Term, 1867.

Abner Partee and his wife, Emma J. Partee, (whose maiden name was Emma J. Lane) alleged, in their bill, that she was the grand-daughter of William Stallings, who, on the 10th day of October, 1858, made and published his last will and testament, the fourth item of which was as follows : " I give and bequeath unto my two grand-children, William and Emma Lane, the children of Dawson B. Lane, the one-sixth part of my estate, to them and their heirs forever ; and do hereby appoint their father, the said Dawson B. Lane,

their guardian for both person and property; and should either of my said grand-children, William and Emma Lane, die before they arrive at lawful age, or marry, then it is my will that the whole of the property which I have here given them, with its increase, go to the survivor; and should they both die without either of them arriving at full age or marrying, then, it is my will that the whole of said property return to my estate and be equally divided between my other five legatees or their legal representatives, subject to the same limitations and restrictions as are imposed respectively upon them in the property given them in this will."

William Stallings died on the 18th of October, 1858,—his will was proven and his executors, under said item, delivered over to Dawson B. Lane as such guardian, cash and property amounting to $40,000.00, or other large sum of money. William Lane died in October, 1866, and before he was of age. Complainants were married 7th March, 1866, and claim the whole of said legacy.

When Stallings died, Dawson B. Lane owned and possessed a tract of land in Morgan county, and some stock of the aggregate value of about seven thousand dollars, and was indebted to Stallings over four thousand dollars (as they believed) for which Stallings held his note, and the money, for which said note was given, almost in whole, was invested in said land. When Dawson B. Lane took charge of said wards and their property, he owed Stallings an amount sufficient, as they believed, to cover all his property. At the sale of Stallings' property, Dawson B. Lane bought about twenty-five hundred acres of the lands of the estate at about ten thousand dollars, and perishable property of said estate of about the same amount. And, in settling with the executors for said purchases, Dawson B. Lane, as such guardian, gave to the executors, receipts for the amount of all of said purchases and of his aforesaid indebtedness to Stallings, thereby investing the money of the wards in all the property he then owned.

The minors were then of tender age,—their guardian, from year to year, received large amounts of money for the hire

of slaves belonging to the wards, and applied the same to his own uses.   He received other sums with which he is chargeable.   He charged them for board and personal  expenses (as appears by his exhibited returns) which they say is illegal. Lane is now involved, and has no property except that aforesaid, (which is insufficient to pay what he owes the wards) and they can rely only on this, because the securities on the guardian's bond, Hugh J. Oglesby and Charter Campbell, are insolvent.

Lane is sued in various cases, and judgments have been obtained against him for a large amount.   Besides this, he, on the 26th of April, 1866, mortgaged to Early W. Thrasher three thousand acres of said lands, bought and paid for with the trust funds aforesaid, to secure to Thrasher the sum of twenty-six hundred dollars.   They charge that Lane is combining with Thrasher and others unknown, etc., to dispose of his property so as to defeat the claim of complainants.   They pray for injunction against Lane and all creditors, and the sheriff of said county to keep the lands *in statu quo* until an account may be had with Lane, and a decree made for the amount due complainants, and that their claim shall be paid out of such property to the exclusion of Lane's other creditors.   They also pray discovery from Lane, and for such other further relief as they may need, etc.   Judge Augustus Reese (then Judge of the Ocmulgee Circuit) granted an injunction as prayed for, restricting it to the property bought of Stallings' executors.

Thrasher, in the same paper, demurred generally, and also answered the bill.   By the answer he says that the bill shows that at Stallings' death, Lane owned three thousand dollars over and above his debts; that the charges in the bill may be all true, except as to combination and fraud.   But he said that his mortgage was *bona fide* taken to secure the loan of money; that he had no notice of any claim by complainants on Lane, or his inability to satisfy them, and insisted that he could not, in law and equity, be postponed till their claims are paid, especially since the insolvency of Lane and his securities on his guardian's bond (if they be insolvent) is the re-

sult of the war, for which has not responsible, etc.   Neither the bill nor answer, shows the date of the note or mortgage held by Thrasher.

Subsequently, he filed an amended answer, averring that Lane purchased the eighteen hundred acres of land (to which the injunction applied) on the 7th December, 1858, and took from Stallings' executors title in fee simple to himself individually, and soon after, or about that time, applied for letters of guardianship over said wards and their property ; was required by the ordinary of said county to give bond in the sum of $52,000.00 ; that, at March Term of said Court, 1859, the jury found a verdict in accordance with the decision of the ordinary, and Lane never gave bond as required nor received letters of guardianship on said estate until the 2d day of April, 1860.

Thrasher moved, before Judge Vason (then presiding) to dismiss the bill for want of equity, and to dissolve the injunction.   Nothing was before the Judge except the bill and answer.   The motion was overruled and Thrasher excepted.

BAUGH & THRASHER, for plaintiffs in error.

N. G. & A. G. FOSTER, for defendants in error.

HARRIS, J.

Dawson B. Lane, the farther of Mrs. Partee, was the executor of the will of Wm. Stallings, her grand-father, and by which will considerable property was devised to her, and he made the testamentary guardian of the person and property so given to his children.   Lane having failed to pay over the property so devised to this daughter, he having mismanaged and wasted her property, and become embarrassed, if not insolvent, this bill after her marriage with Partee, was filed in their joint names to trace a part of the proceeds devised to Mrs. Partee, and which had been invested in lands by Lane in his own name, and on which lands the defendant, Thrasher, had taken a mortgage to secure a large loan of money made by him to Lane.

Thrasher answered the bill ; averred the *bona fide* charac-
ter of his loan to Lane, and that he took the mortgage on
the land for his security, without notice of any trust at the
time, in said land for Mrs. Partee.   Upon the filing this
answer, his counsel moved to dismiss the bill for want of
equity.   This motion was properly refused.   The bill, if not
making a case for a Court of Equity, should regularly have
been disposed of by demurrer, though oftentimes during the
progress of a trial a bill is dismissed, on motion, when it be-
comes apparent that the complainant is not entitled to relief.
It was not contended that the bill had no equity, but the mo-
tion proceeded from the misconception that the Court could
decide that complainants were entitled to no discovery, and
no relief whenever a full answer was filed.

Another motion, however, was made by Thrasher's coun-
sel, which we are of the opinion the Court below should
have acceded to.   The injunction restraining the levy and
sale under the mortgage *fi. fa.*, should have been removed
as there was no allegation in complainant's bill which impu-
ted bad faith, or fraud, or notice, or knowledge of any trust
in Lane for Mrs. Partee to Thrasher at the time, or previous
to his taking the mortgage on the land, alleged to have been
purchased with the proceeds of property devised by Stallings
to Mrs. Partee; and Trasher, having, by his answer, fully denied
all notice or knowledge of any trust and (sworn) that the trans-
action was *bona fide*, and upon a valuable consideration, we
can perceive no sufficient reason for retaining the injunction to
the hearing.

Judgment reversed.