## ROBERTSON *vs.* WILDER & CO.

1. The act of December 22, 1839 (Cobb's Dig., 38), fixed rates for the wharfage of vessels, for the landing of produce and goods, and for the shipping of the same, and the storage thereof, and gave to the owners or occupiers of such wharves the right to charge the rates thereby fixed, and no more. Where, under the port regulations of Savannah, two vessels were allowed to lie abreast at a wharf, and, for the sake of convenience in trans-shipment, the cargo was not actually landed upon the wharf and then reshipped to the second vessel, but was carried directly from one to the other, it being the unvarying interpretation that such trans-shipment included both

landing and shipping, the wharf owner would have the right to charge the rates allowed for landing and shipping, in the absence of any contract to the contrary.

(*a.*) The act of parliament which established rates for wharfage and cranage, in cases in which such services were required, differed from the act of the legislature fixing the charges for landing and shipping.

2. There was no evidence in this case of the existence of any custom in the port of Savannah to charge but a single wharfage in case of immediate trans-shipment from one vessel to another; and the charge of court to the effect that if such a custom existed, and the parties contracted with reference to it, it became by implication a part of the contract, and the plaintiff thereby waived his legal right to charge two wharfages, was error.

(*a.*) Individual habits of dealing do not make a universal custom which by implication enters into the contract and forms a part thereof, nor will a deviation from the universal custom in particular instances impair or destroy its validity as such.

(*b.*) Therefore, that wharfingers of the port of Savannah, in competing for trade, frequently made contracts for less rates than those allowed either by law or by usage, does not make a universal or binding custom, which by implication enters into a wharfinger's contract.

January 30, 1883.

Ports. Wharves. Contracts. Charge of Court. Custom. Before Judge HARDIN. City Court of Savannah. February Term, 1882.

Reported in the decision.

N. C. COLLIER; CHARLTON & MACKALL, for plaintiff in error.

L. H. DeMONTMOLLIN, by brief, for defendants.

HALL, Justice.

The plaintiff was a wharf owner in the city of Savannah, and brought suit against the defendants to recover wharfage for " landing " the cargo of the barque " Traveller," and "shipping" the said cargo upon the barque "Aereola."

There were but two items in the account, one for "land-ing," $312.50, and the other for "shipping," $312.50. The vessels lay abreast at plaintiff's wharf—the "Travel-ler" occupying the inner, and the "Aereola" the outer berth; the cargo of the "Traveller," without being actu-ally landed on the plaintiff's wharf, was taken out and im-mediately put aboard the "Aereola." There was no dis-pute as to the port regulation, which allowed two vessels to lie abreast, as was the case in this instance.

1. The first and leading question in the case, was wheth-er the plaintiff had the right, under the act of the 22d December, 1839 (Cobb's Dig., 38), (Savannah City Code, 220), to charge double wharfage for transferring the cargo from one vessel to another lying abreast at his wharf, as were these barques, without actually landing the cargo of the one on the wharf before transferring it to the other. The act above recited fixes rates for the wharfage or dockage of vessels lying at wharves, for the landing of produce and other goods, and for the ship-ping of the same, and the storage thereof, and gives to the owners or occupiers of such wharves the right to charge the rates thereby fixed, and no more. But for the port regulation allowing two vessels to lie abreast at the wharf, for the convenience of trans-shipment, it seems there would have to be an actual landing of the cargo upon the wharf in every instance where the cargo of one vessel was to be transferred to another. The regulation was not designed to deprive the proprietor of the wharf of any rights to charge for "landing" and "shipping," but was made for the convenience of the trade. Such has been the unvarying interpretation of the terms "landing" and "shipping," whenever a cargo was taken from one vessel at a wharf and put into another lying abreast of her, without the actual use of the wharf in making the transfer. And such, too, has been the uniform and uni-versal custom of the port, as appears, from the evidence in this case. The court below charged the jury, that in the

Robertson *vs.* Wilder & Co.

absence of any contract varying or modifying the custom, the plaintiff had the right to charge, under the circumstances of this case, the rates allowed both for "landing" and "shipping," and thus far we think the law was properly charged.

In opposition to this view of the matter, our attention has been called to the case of Stephen *et al. vs.* Costor *et al.*, 3 Burrow's R., 1408, in which it was held, that wharfingers in London are not allowed to charge wharfage for goods unladened into lighters out of barges fastened to their wharfs. The act of parliament under which this claim was made, established rates for wharfage and cranage in cases in which such services were required, but not for "landing" and "shipping," as does the act of our legislature. Lord Mansfield, after stating the question, says, "It is not contended on the part of the wharfingers that any meaning is to be put upon the words, 'all such goods and merchandizes shall be actually loaded or unloaded when they are brought thither.'" This was the case of putting goods on lighters. The goods were not to be shipped from that port to another, but were to be landed from the lighters either at that or some other wharf of the same port. The learned judge, after declaring that the case is neither within the act of parliament nor the order of council based thereon, gives this reason for that opinion, that the legislature would not give the same duty for this (if they really meant to give any) as they gave for landing the goods upon the wharf; they would certainly have given a smaller duty for this alone; because the duty must still be paid again whatever wharf they shall at last be landed upon. He shows that this lighterage could be effected as well without mooring or fastening to the wharf, as by doing so, and if the barge was fastened to the wharf, for this or any other purpose, the proprietor had his remedy to recover compensation for such use of his property.

"Wharf accommodation is a necessity of navigation,

and such accommodations are indispensable for ships and vessels of every name and description, whether employed in carrying freights or passengers, or engaged in the fisheries. Erections of this kind are constructed to enable ships, vessels and all sorts of water crafts to lie in port in safety, and to facilitate their operations in loading and unloading cargo and in receiving and landing passengers. And whenever any use is made of a wharf for these or other purpose connected with navigation or commerce, in the absence of any express contract, the right to compensation is implied and this right will be enforced as a maritime lien." Ex parte Easton, 95 U. S. R., 68 et seq. This is the general law, but why seek compensation for the value of the services when the rate is fixed by statute, and by port regulations and universal custom in conformity to the statute?

If this legal right to charge for "loading" and "unloading" wherever the wharf is used for that purpose, whether the goods are actually landed from one vessel and then shipped on another or not, needs reinforcement, it will be found in the universal custom of the port of Savannah, varied only by contract in particular instances, testified to by every witness, including both plaintiff and defendant examined in this case.

2. Two defences were insisted upon in this case :

(1.) That there was a contract between these parties in reference to the use of this wharf.

(2.) That by the custom of the port it was usual to charge only one wharfage under the circumstances of the case.

The verdict of the jury found that only one wharfage was due.

The court, among other things, submitted both these defences to the jury, and charged them, "although the plaintiff might have a legal right to charge, in the absence of contract, two wharfages, one for the taking out of the cargo of the 'Traveller,' and the other for the putting in the cargo of the 'Aereola,' yet if they found from the

evidence that there was such a custom as the one before referred to, that the wharfingers of this port charge but a single wharfage in the case of the trans-shipment of the cargo of one vessel directly into another without the intervention of the wharf, and further find that there was a contract, either express or implied, between the parties for the trans-shipment of the phosphate from the 'Traveller' into the 'Aereola,' without anything said as to the rate of wharfage to be charged, and that such a custom was in their minds, and that this entered into the contract, that the parties by so contracting and doing so in reference to such custom, it by implication became a part of the contract and the plaintiff thereby waived his legal right to charge two wharfages."

So much of the charge as is above quoted, was excepted to, and we think the exception well taken; because there is no evidence in the case to sustain the assumption that it was the custom of the port, under the circumstances, to charge but a single wharfage where the cargo is trans-shipped immediately from one vessel to another. There is not a single witness who testifies to any such usage as that referred to in this charge. Even Gandry, who intimates something of the sort in his direct evidence, states explicitly on his cross-examination, that the word "landing" as used among the shippers and wharfingers of the port, means taking the cargo out of a vessel, and the word "shipping" putting the cargo into a vessel, either with or without the intervention of the wharf, and where a cargo is transferred from one vessel into another, both lying abreast at the same wharf, there is both a "landing" and a "shipping."

There was evidence enough in this case to show that this usage or custom was frequently departed from by an understanding between the parties, and an attempt was made here to supersede the custom by a contract, into which the plaintiff refused to enter, and of which refusal the defendants were notified, before the trans-shipment in

question was entered upon, by the use of the plaintiff's wharf for that purpose. The defendants had consumma- ted no contract with the plaintiff to the end they had in view, even before the purchase of the cargo of the " Trav- eller." After the party to whom the subject was referred for his opinion had given his view of the matter, the de- fendants wanted other terms than those which Mr. Gandry, to whom the reference was made, thought would be right. Their conduct and declarations show plainly that they did not consider themselves bound by the opinion of this referee; they were, after that opinion was given, insist- ing upon terms which they asserted they could get from the Central railroad company. The plaintiff promptly notified them that he would insist upon his rights, and claim all that was allowed him by the law and custom of the port for the use to be made of his property; that all contracts for a lower rate than that allowed by law and the custom of the port, were at an end; thereupon the de- fendants insisted upon what they deemed to be their right, declined to pay more than one wharfage for the transfer of the cargo from one vessel to the other, and threatened, after taking advice of counsel, that if the transfer was delayed by plaintiff's insisting on double wharfage, to hold him responsible for " demurrage." The plaintiff insisted throughout the transaction upon his right to have double wharfage, and denied his responsibility for demurrage.

The defendants insisted upon their liability for only one wharfage, both under the law and upon what they claimed to be the custom of the port under the circum- stances of this case.

It is very evident from all the testimony in the case, that there was no such universal custom in this particular instance as that relied upon by the defendants, none such as could make it by implication a part of the contract be- tween the parties. See *Ocean Steamship Company vs. McAlpin,* decided at this term. That wharfingers at the

port of Savannah, in the keen competition of trade, frequently made contracts for less rates than those allowed either by law or usage, does not make a universal binding custom which by implication is presumed to enter into the contract and form a part thereof. These are but individual habits of dealing. Contracts may be made for less rates than those prescribed by custom or law, and in that event they would be valid. 48 *Ga.*, 601. This court in the 37 *Ga.*, 392, held that the court below charged right in relation to the custom sought to be set up in favor of a private banker or broker, and said "they were not aware of any authority which would make the habits of dealing of an individual part of the law of the land." And, *e converso*, it has been held by this court, that a deviation from a universal custom, in particular instances, as in the case now before the court, does not impair or destroy its validity as such custom. 64 *Ga.*, 184, 192.

The charge excepted to submits to the jury questions growing out of the alleged custom upon which the defendants rely; and also, those growing out of the contracts claimed to exist between the parties, when there is no evidence in the case to authorize it in either aspect.

The motion for a new trial was made upon the grounds that this charge was erroneous; that the verdict was contrary to law and evidence, and without evidence to support it, and from the view we take, it should have been granted upon all these grounds.

Judgment reversed.