## 10132.  SOUTHERN EXPRESS COMPANY *v.* THE STATE.

1. Under the act passed by the General Assembly of the State of Georgia at its extraordinary session held in March, 1917, pure alcohol for medicinal purposes can not be legally shipped from one point to another, both of which are in the State of Georgia.
2. Under the law referred to above, the act of transporting alcoholic liquors is a separate and distinct offense from that of having, controlling, and possessing such liquors.

DECIDED FEBRUARY 1 1919

(Certiorari granted by the Supreme Court.)

Indictment for violation of prohibition law; from Mitchell superior court—Judge Harrell. September 2, 1918.

*Pope & Bennet, Robert C. & Philip H. Alston,* for plaintiff in error. *R. C. Bell,* solicitor-general, *F. A. Hooper,* contra.

BLOODWORTH, J. The Southern Express Company was indicted for violation of the law passed by the General Assembly of Georgia at its extraordinary session held in March, 1917. The indictment contained two counts, the first charging that the defendant "did then and there transport, ship and carry from Valdosta, Ga., to Camilla, Ga., both being points within this State, spirituous, vinous, malted, fermented, alcoholic, and intoxicating liquors and beverages, the last named point, to wit, Camilla, Ga., being in the county of Mitchell, and said defendants did so transport, ship, and carry said liquors and beverages in the said county of Mitchell." The second count alleged that the said company did "unlawfully and with force and arms, in the county aforesaid, have, control, and possess spirituous, alcoholic, and intoxicating liquors." The case was submitted to the judge on the following agreed statement of facts: "The Southern Express Company was a corporation and common carrier at all times herein mentioned. In April, 1917, said express company received for transportation, from the Mashburn Drug Company, which was at all times herein mentioned a wholesale druggist of Valdosta, Ga., at said Valdosta, Ga., one gallon of pure alcohol, to be transported by said Southern Express Company to Dr. H. G. Fussell at Camilla, Ga., and did transport the same from said Southern Express Company's office in Valdosta, Ga., to its office in Camilla, Ga., in Mitchell county. Said alcohol was not delivered by said express company to Dr. Fussell, but was seized in the office of said express company by the sheriff at Camilla, Ga. Dr. Fussell was at all times mentioned herein a practicing physician of Camilla, Ga., but was not a pharmacist or apothecary holding license as much from the State Board of Pharmacy, but kept a stock of drugs and medicines, costing at wholesale from $100 to $200 in his office at Camilla, Ga., for use in putting up his own prescriptions and dispensing medicines from his own office, and in his practice of his profession as a doctor of medicine; and said alcohol was wanted by him for medicinal purposes in connection with said stock of drugs and medicines. He had ordered the same

from said Mashburn Drug Company of Valdosta, Ga., and the
Southern Express Company did transport the same for said Dr.
Fussell from said Mashburn Drug Company, which was under-
taking to fill said order therefor. Camilla and Valdosta are both
points within the State of Georgia, and said alcohol was conveyed
from Valdosta, Ga., to Camilla, Ga., and into the county of Mitchell,
and was in said Southern Express Company's custody at its office
in Camilla, in Mitchell county, for the purpose aforesaid, when
seized by the sheriff. Subsequently said Fussell applied in due
form to the ordinary of Mitchell county for a permit to receive
said alcohol for medicinal purposes, stating in said application that
the business or occupation of applicant was that of a physician, said
application being supported in due form by the affidavits of said
Fussell and a certificate of two citizens of Mitchell county, as
required by law, and said application was approved and granted by
said ordinary, and said sheriff then delivered said alcohol to said
Fussell. All of the above stated transactions occurred in the
month of April, 1917, and prior to April 11, 1917, the date when
said special presentment was returned and filed. Neither said
defendant nor any agent or officer thereof intended to violate any
law in said transaction or knew that it was a violation of the law
to do any of such things, if it was such in fact." The trial judge
rendered a judgment against the defendant, and it excepted.

1. In the brief of one of the counsel for the plaintiff in error,
the issue to be settled is thus stated: "The case can be stated in
one question, to wit: Can a wholesale druggist doing business in
Georgia ship alcohol under the restrictions contained in section 3
of the act of the legislature of the State of Georgia approved March
28, 1917, to a practising physician who is the sole proprietor of a
drug-store in the State of Georgia?" We are convinced that this
question must be answered in the negative. Section 1 of the said
act is as follows: "Be it enacted by the General Assembly of
Georgia, and it is hereby enacted by authority of the same, that
from and after the passage of this act it shall be unlawful for any
common carrier, corporation, firm or individual to transport, ship
or carry, by any means whatsoever, with or without hire, or cause
the same to be done, from any point without this State to any point
within this State, or from place to place within this State, whether
intended for personal use or otherwise, any spirituous, vinous,

malted, fermented or intoxicating liquors, or any of the prohibited
liquors or beverages, as are defined in act approved November
17, 1915, being 'an act to make clearer and more certain' the pro-
hibition laws of this State, etc., or any alcoholic compound or malt
or liquors whether intended for beverage purposes or not, but which
can be diluted, and when so diluted may be used as a beverage and
will produce intoxication. It shall be unlawful for any corporation,
firm, person or individual to receive from any common carrier, cor-
poration, firm, person or individual, or to have, control or possess,
in this State, any of said enumerated liquors or beverages whether
intended for personal use or otherwise, save as is hereinafter
excepted." It will be noticed that the first portion of the section
just quoted deals with the transportation of intoxicating liquors,
and absolutely prohibits their transportation "from any point
without this State to any point within this State, or *from place to
place within this State."* (Italics ours.) The liquors "defined
in the act approved November 17, 1915," just referred to, embrace
all kinds of intoxicating liquors, as follows: "(1) alcohol, alcoholic
liquors, spirituous liquors and all mixed liquors, any part of which
is spirituous, foreign or domestic spirits, or rectified or distilled
spirits; absinthe, whisky, brandy, rum and gin; (2) vinous liquors
and beverages; (3) all malted, fermented or brewed liquors of any
name or description, manufactured from malt, wholly or in part,
such as beer, lager beer, near-beer, porter and ale and all brewed
or fermented liquors and beverages in which maltose is a substan-
tial ingredient, whether alcoholic or not or whether intoxicating
or not; (4) and any drinks, liquors or beverages containing one-half
of one per cent of alcohol or more by volume at 60 degrees Fahren-
heit; or any other liquids or liquors manufactured or sold, or other-
wise disposed of, for beverage purposes, containing said amount of
one-half of one per cent of alcohol or more; (5) any intoxicating
bitters or beverages by whatever name called; (6) all liquors and
beverages or drinks made in imitation of or intended as a substi-
tute for beer, ale, wine or whisky, or other alcoholic or spirituous,
vinous, or malt liquors, including those liquors and beverages
commonly known and called near-beer." Ga. Laws, Ex. Sess.,
1915, p. 79, sec. 1. Thus it will be seen that if section 1 of the
act approved March 28, 1917, stood alone, it would absolutely pre-
vent the transportation of alcohol "from any point without this

State to any point within this State, or from place to place within this State."

Section 2 of the act approved March 28, 1917, is as follows: "Be it further enacted by the authority aforesaid, that nothing herein contained shall prohibit the use of pure alcohol for medicinal purposes as is prescribed in sections 426, 427, 428, 429 and 430 of the Criminal Code of 1910, said alcohol, however, to be shipped, received and possessed only as is provided in section 3 of this act." It will be observed that this section provides for "the use of pure alcohol for medicinal purposes as is prescribed in sections 426, 427, 428, 429 and 430 of the Criminal Code of 1910." Section 430 of the Criminal Code just referred to is as follows: "Nothing in the preceding sections of this Article shall be so construed as to prevent wholesale druggists from selling or furnishing alcohol in wholesale quantities to regular licensed retail druggists, or to public or charity hospitals, or to medical or pharmaceutical colleges. All wholesale druggists shall be required to keep a complete record of all their sales of alcohol, which record shall at all times be open for inspection to the regular authorities of such counties or cities in which such wholesale stores are located." The mention of section 430 in section 2 of the act approved March 28, 1917, causes counsel for plaintiff in error to insist that section 2 of the act approved March 28, 1917, among other things, "preserved the life of sections 426, 427, 428, 429, 430 of the Criminal Code of 1910, and added thereto by reference the provisions which are set out in section 3; it thereby brought into section 2 the terms of section 3; the purpose of this was to make the same requirements as to shipments of alcohol from points within the State to other points within the State as were made as to shipments from points without the State to points within the State."

We can not agree with this conclusion of learned counsel. While section 2 of the act approved March 28, 1917, provides for the *use* of pure alcohol, as provided in sections 426 to 430, inclusive, of the Penal Code of 1910, this same section provides: "said alcohol, however, to be shipped, received and possessed *only as is provided in section three of this act.*" (Italics ours.) The word "only," as here used, is exclusive, and while under this section (2 of the act of 1917) alcoholic liquors after being received can be *used* as prescribed by sections 426 to 430 inclusive, they can be

"shipped, received and possessed only as is provided in section 3 of this act." What does section 3 of said act say in reference to shipping alcohol? So much thereof as is necessary for determination of the question at issue is as follows: "any common carrier may transport, ship or carry from any point without this State to any point within this State, pure alcohol to be received only by any practicing physician who is the sole proprietor of a drug-store, licensed druggists, pharmacists, manufacturers, chartered colleges, chartered hospitals, or State institutions, and to be used only for medicinal, mechanical and scientific purposes not contravening in any way the prohibition laws of this State, under the following conditions:" (then follow the conditions). This section does not make any provision whatever for the shipping of alcohol "from place to place within this State." Construing together sections 1, 2, and 3 of the act under consideration, it seems to us that the only logical conclusion that can be reached is that pure alcohol for medicinal purposes can be "shipped, received and possessed" only when transported, shipped, or carried "from any point without this State to any point within this State."

2. Under the act approved March 28, 1917, the act of transporting alcoholic liquors as set out in the first count of the indictment is a separate and distinct offense from that of having, controlling, and possessing alcoholic liquors as charged in the second count thereof.

3. The agreed statement of facts shows that the defendant was guilty on both counts of the indictment, and the judgment is

*Affirmed. Broyles, P. J., concurs.*

STEPHENS, J., dissenting. The questions here presented for determination are, first, is it a violation of the criminal laws of this State for a common carrier, upon the conditions set forth in the agreed statement of facts, to haul and transport, from one point within this State to another point within this State, wholesale shipments of pure alcohol; and, second, is the possession by such carrier of such alcohol for the purposes of such transportation likewise a violation of the criminal laws of this State? Answering the first question in the negative would eliminate and dispose of the second question, since if it be not unlawful for the carrier to transport alcohol as above set out, it certainly would not be unlawful for such carrier, for the purpose of effecting such transportation, to have such alcohol in its possession and control.

.The prosecution in this case is brought under what is popularly called the "bone dry" act of 1917. Section 1 of this act provides that "it shall be unlawful for any common carrier, corporation, firm, or individual to transport . . from any point without this State to any point within this State, or from place to place within this State, whether intended for personal use or otherwise, any spirituous, vinous, malted, fermented or intoxicating liquors, or any of the prohibited liquors or beverages, as are defined in the Act approved November 17, 1915, being 'an Act to make clearer and more certain' the prohibition laws of this State," etc. The act of 1917, in section 1, also provides that it shall be unlawful for any "corporation, firm, person or individual . . to have, control or possess in this State, any of the said enumerated liquors or beverages whether intended for personal use or otherwise, save as hereinafter excepted." The prohibited liquors above referred to by reference to the prohibition act of 1915 include pure alcohol. Without more, therefore, the defendant corporation and common carrier would be guilty of the offense charged.in both counts of the indictment, the one for transporting, and the other for having in possession such prohibited liquors. ´

By way of defense, the defendant, admitting the facts charged in both counts of the indictment, relies upon the provision of section 2 of the act of 1917, claiming that it received for shipment at a point within this State pure alcohol in wholesale quantities from a wholesale druggist for the purpose of transportation to another point in this State, and to be delivered to a person authorized to receive the same under the terms of the exception provided for in section 2 of this act. The case, therefore, turns upon the proper construction to be placed upon section 2 of the act of 1917, which section reads as follows: "Be it further enacted by the authority aforesaid, that nothing herein contained shall prohibit the use of pure alcohol for medicinal purposes as is prescribed in sections 426, 427, 428, 429 and 430 of the Criminal Code of 1910, said alcohol, however, to be shipped, received and possessed only as is provided in section 3 of this act." Section 2 of the act of 1917, therefore, modifies the broad and sweeping terms of the preceding section making it unlawful to transport or possess alcohol and other prohibited liquors therein mentioned, by expressly providing that pure alcohol of a certain description and for certain purposes

as prescribed in a former act of the legislature may be "shipped, received and possessed only as provided in section 3 of this Act," which said section 3 provides for the receipt, under certain restrictions and by certain designated parties, of shipments of pure alcohol when transported by a common carrier into this State from points without this State. It seems, therefore, that the clear intent of the act of 1917, despite the exhaustive terms in its first section absolutely prohibiting the transportation or possession for any purpose of intoxicating liquors generally, including pure alcohol, is to permit the possession or transportation of pure alcohol for certain purposes, under certain conditions to and from certain designated and authorized persons or parties. This intent is manifest, not only by the terms of section 2 and section 3, but by the title of the act making it "unlawful to transport," or "to have, receive, possess or control," such liquors, excepting in the former case "alcohol and wine under certain restrictions and limitations," and in the latter case, "alcohol for medicinal, mechanical and scientific purposes." Thus the act of 1917 sanctions and legalizes the possession and transportation of pure alcohol for certain purposes under certain well-defined restrictions. Indeed it had been the settled policy of this State, prior to the enactment of the act of 1917, to authorize the sale and use of pure alcohol for medicinal purposes. This was expressly provided in the first state-wide prohibition law of 1907, referred to, and declared and reaffirmed in the act of 1915. (Acts 1907, p. 81; Acts 1915, Ex. Sess., pp. 100, 101, 103; Acts 1916, p. 72).

It is clear beyond question that by the precise terms of the act of 1917, as set out in section 3 thereof, a common carrier may legally transport, under the restrictions therein provided as to delivery, etc., pure alcohol from a point *without* this State to a point within this State. Can such a shipment of alcohol by a common carrier be legally made under the terms of this act as set out in section 2 thereof from a point *within* this State to another point *within* this State? I think it can, under certain restrictions and for certain designated purposes. Section 2 of the act, as has already been pointed out, provides that "nothing herein contained shall prohibit the use of pure alcohol for medicinal purposes as is prescribed in sections 426, 427, 428, 429 and 430 of the Criminal Code of 1910, said alcohol, however, to be shipped, received and

possessed only as is provided in section 3 of this Act." By reciting and re-enacting said code-sections, it expressly saves and preserves the prohibition act of 1907 in so far as this act permits the "use of pure alcohol for medicinal purposes." The act of 1907, which had never been repealed, but expressly preserved (Acts 1915, Ex. Sess., p. 89, sec. 24), being thus declared and re-enacted by the act of 1917, and by the terms of the latter act made a part thereof, the latter act must be read and construed as if these sections of the act of 1907 were copied and reproduced therein. Nunes *v.* Wellisch, 12 Bush (Ky.), 363. The act of 1907, so far as it serves our purpose here, provides in section 430 of the Penal Code of 1910, as follows: "Nothing in the preceding sections of this Article shall be so construed as to prevent wholesale druggists from selling or furnishing alcohol in wholesale quantities to regular liscensed retail druggists, or to public or charity hospitals, or to medical or pharmaceutical colleges. All wholesale druggists shall be required to keep a complete record of all their sales of alcohol, which record shall at all times be open for inspection to the regular authorities of such counties or cities in which such wholesale stores are located." It is therefore lawful for wholesale druggists in the State of Georgia to possess and sell to certain designated parties in wholesale quanties pure alcohol for medicinal purposes. Pure alcohol, therefore, having been continuously recognized by the legislature as a legitimate article of commerce, and its importation from other States being expressly permitted and provided for as set out in section 3 of the act of 1917, it is hardly conceivable that *intrastate* traffiic and transportation therein would be considered and regarded as criminal, except by an unambiguous and unqualified legislative enactment.

If there be any doubt, therefore, as to the legislative intent to legalize such intrastate shipments the doubt should be resolved in favor of the legality of the same. Therefore, the clause in section 2 of the act of 1917, which provides that "said alcohol, however, to be shipped, received and possessed only as is provided in section 3 of this Act," should not be construed as meaning that the phrase "said alcohol" refers back to, and has reference only to, the phrase "pure alcohol," appearing a few words back towards the beginning of this section, but will be construed as having reference to *alcohol* mentioned in the recited code-sections 426 to 430 contained therein.

Giving to this clause in section 2 of the act of 1917 the first construction would be in accordance with the contentions of the State, and would be as if said section read as follows: "nothing herein contained shall prohibit the use of pure alcohol for medicinal purposes, . . said alcohol, however, to be shipped, received and possessed only as is provided in section 3 of this act." This would mean that section 3 would be exhaustive as to the transportation of pure alcohol for medicinal purposes, and therefore *only* interstate shipments as provided therein could be legally made. But giving to this clause the second construction would be equivalent to its reading as follows: "nothing herein contained shall prohibit the use of pure alcohol for medicinal purposes as is prescribed in [section 430 of the Penal Code providing that 'nothing in the preceding sections shall be construed as to prevent wholesale druggists from selling or furnishing alcohol in wholesale quantities to regular licensed retail druggists, or to public or charity hospitals, or to medical or pharmaceutical colleges'], said alcohol, however, to be shipped, received and possessed only as is prescribed in section 3 of this act." Placing this latter construction, which I think is correct, upon section 2 of the act of 1917, *intrastate* shipments of alcohol under certain restrictions are permitted and legalized. The alcohol mentioned in code-section 430, just quoted as from section 2 of the act of 1917, being alcohol manifestly sold in this State and by wholesale druggists in this State, could only be shipped from a point within this State, and if received as provided in section 3 of said act of 1917, said section 3 providing for a reception in this State only, it could only be received in this State. The latter construction being equally as plausible as the former, and, moreover, being favorable to the defendant in a criminal prosecution, I am constrained, in accordance with the well-recognized maxim that a criminal statute should be construed in favor of innocence, to adopt this latter construction and to conclude that section 2 of the act of 1917 legalizes intrastate shipments of pure alcohol under certain restrictions, which alcohol shall, in the terms of the act of 1917, "be shipped, received, and possessed only as prescribed in section 3 of this act," providing for interstate shipments.

I understand my colleagues in the majority opinion to hold that section 2 of the act of 1917 goes no further than to preserve and

secure the right only to *use* pure alcohol for medicinal purposes as prescribed in sections 426 to 430 of the Penal Code, and that the concluding clause in this section with reference to *shipping, receiving,* and *possessing* pure alcohol, instead of providing for the shipment of such alcohol by the parties named in the code-sections referred to,—such as wholesale druggists,—operates as a precautionary proviso guarding the act against a construction that would permit alcohol to be shipped otherwise than in interstate shipments coming into this State as provided in section 3 of the act of 1917. This position, to my mind, is untenable. If this be the proper construction to be placed upon section 2 of this act, the clause, "said alcohol, however, to be shipped, received and possessed only as provided in section 3 of this act," is mere surplusage and adds nothing to the meaning of the act. It is a mere vermiform appendix which can be cut out and dispensed with without harm to the body of the act. If section 3 were exhaustive as to shipment, receipt, and possession only when coming in interstate shipments from points without the State, section 2 would as well read as if the above-quoted clause were omitted and stricken entirely therefrom. The transportation of alcohol mentioned therein, necessarily intrastate, would then be prohibited under the provisions of section 1, and only *interstate* shipments as construed in the majority opinion, and as provided in section 3, could move in this State. It is a well-recognized principle of statutory construction that the legislature means something by every provision contained in a statute, and that all provisions therein should be construed as adding to or giving to the statute a meaning or construction different to that attached to the remaining part of the statute with the provision in question eliminated. Applying this rule, and giving to this clause a construction that would add to or modify the meaning of section 2 were this clause omitted, the only conclusion that could be arrived at would be that section 2, with this clause retained, provides for shipments of alcohol by parties authorized to sell it under the code-sections mentioned therein, the same being parties within this State such as wholesale druggists; and when such shipments are received "as provided in section 3," they would be received at points within this State. Giving to this clause such a construction, section 2 of the act of 1917 must therefore be construed as recognizing and legalizing intrastate shipments.

Furthermore, each and every word in a statute is supposed to have a distinctive meaning, and is to be given a construction accordingly. Otherwise it is uselessly inserted. The clause referred to provides that alcohol shall be *"shipped, received* and *possessed."* (Italics mine.) Giving, therefore, to the words *"shipped," "received," and "possessed"* each a separate and distinct meaning, there are three ideas contained in this clause: the subjective idea of *shipping,* the objective idea of *receiving,* and the *passive* idea of *possessing.* All three of these are applied by section 2 to alcohol mentioned in code-sections 426 to 430. *Shipping* in the subjective sense is going out from or leaving the shipper, the opposite of *receiving.* Used in this sense when applied to alcohol mentioned in code-sections 426 to 430, it is necessarily applied to alcohol within this State, which, of course, cannot be shipped in this sense of the term otherwise than from a point within this State. Applying to the word "shipped" any other meaning would render it objective, and would attribute to it the sense of coming in towards the point of destination. This latter idea is covered by the word "received." Therefore, in order to give the word "shipped" any significance whatever and to concede that the legislature meant something by the insertion of this word in the statute, the word "shipped" must be given the construction first suggested, which could only mean that alcohol already in this State, when shipped, must be shipped from and start from a point within this State. Of course, when the alcohol mentioned in these code-sections is "received" or "possessed," it must necessarily be received or possessed within this State. Any other conception would be absurd. It will be noticed in this connection that when the legislature, in section 3 of the act of 1917, the section following section 2 containing the clause under consideration, uses the word *"shipped"* in the objective sense,—the sense of coming towards the point of destination,—where it refers to the receipt in this State of incoming shipments from without the State, uses the phrase "have shipped." This would indicate that the word "shipped" used in this clause in the act is to be given the subjective construction suggested.

The word "shipping" is defined by Mr. Justice Hall in *Robertson* v. *Wilder,* 69 *Ga.* 345, as "putting the cargo into a vessel." Webster's New International Dictionary defines the verb "ship,"— "to put for transportation aboard a vessel." The Century Diction-

ary defines it,—"to put or take on board a ship or vessel; as to ship goods to Liverpool from New York. To send or convey by ship. To deliver to a common carrier . . for transportation, . . as to ship by express;" quoting from Child's Ballads,—

> "'The tane is shipped at the pier of Leith,
> The tother at the Queen's Ferrie.'"

Bouvier's Law Dictionary defines *"shipper"* as "one who ships or puts goods on board a vessel to be carried to another place." Abbott's Law Dictionary, referring to the word *"skipper,"* says: "Shipper generally means one who places his goods on board a vessel for transportation." Rapalje & Lawrence's Law Dictionary says a *"shipper"* is "the owner of goods who entrusts them on board a vessel for delivery abroad." See 7 Words & Phrases (First Series), 6487; 4 Words & Phrases (Second Series), 571. In State *v.* Carson, 147 Iowa, 561 (126 N. W. 698, 140 Am. St. R. 330), it is held, "The words "ship' and 'shipments' are used to express the idea of goods delivered to carriers for the purpose of being transported from one place to another. . . The ordinary meaning of the word 'shipped' is to load for transportation." In Bowes *v.* Shand, L. R. 2 App. Cas. 455 (House of Lords), the court was unanimous in the opinion that the word *"shipped,"* according to its natural and ordinary signification, was "the putting of goods on board." It was said in that case by Lord Hatherley, "I think the meaning of the word 'shipped' is sufficiently understood by this time in commerce. But if it were needed, I think we have sufficient evidence before us that by the word *'shipped'* all the witnesses understood 'put on board'. I read the contract therefore as if it said 'put on board,'" etc. See also Ledon *v.* Havemeyer, 121 N. Y. 179 (24 N. E. 297, 8 L. R. A. 245); Fisher *v.* Minot, 76 Mass. 260. In the language of the court in State *v.* Carson, cited supra, "the court is not to presume that the legislature intended the word *'ship'* to mean something different from its ordinary signification."

The legislature of this State in adopting the clause under consideration, providing for the shipment of alcohol, did not intend to prescribe rules and regulations governing the manner in which a shipment may be begun or initiated in a foreign State beyond its jurisdiction. It certainly will not be presumed that the legislature intended to exceed its powers and go beyond its jurisdiction

and enact a futile and inoperative statute. Extra territorium jus dicenti impune non paretur. Giving to the word "shipped" any signification other than its use in the subjective and ordinary sense, as defined above, would be to hold that the legislature intended to enact just such an inoperative and ineffective statute, and meant to control shipments made in other States. Section 2 of the act of 1917 must for this reason be construed as authorizing and legalizing shipments of pure alcohol for medicinal purposes between points within this State. The majority opinion of this court, I respectfully suggest, ignores the first or subjective idea of "*shipping*" and plants itself upon the two ideas of "*receiving*" and "*possessing*" only. This, I take it, is not the true construction to be placed upon section 2 of this act.

How is a shipment, in its accepted sense of being put on board a carrier, provided for in section 3, when, according to the terms of this section, no such shipment is made from a point within this State? How can alcohol in this State be "shipped" or put on board in accordance with the provisions of section 3, which makes no provision for such shipments, but only provides for the *possession* or *receipt* of alcohol from other States? The answer is this: The word "shipped" as used in section 2, in addition to the idea of being put on board a ship or carrier, contains the further idea of transportation, i. e., *transported, hauled, or carried* from the point of shipment. See Kipling's "Ship me somewhere east of Suez." Unless the idea of transportation or movement from the shipping point is lodged somewhere between the ideas "*shipped*" and "*received,*" the alcohol when "*shipped*" merely would remain stationary, and would not be transported or carried away. So when alcohol mentioned in section 2 is transported, shipped, or carried, or hauled, from a shipping point within this State, it is transported, shipped, or carried, or hauled as provided in section 3, which section provides that the carrier may "*transport; ship* or *carry* . . pure alcohol.*" Furthermore, the instrumentality by which such alcohol is "shipped" or "carried," under the provisions of section 3, is by a "*common carrier,*" and not otherwise. Therefore, the alcohol referred to in section 2 must be "shipped" only as provided in section 3," i. e. by a *common carrier.* Construing the two sections 2 and 3 together, I take it that they mean that pure alcohol may be shipped and transported from a point within this State

to another point within this State, and shall be so shipped and transported by a *common carrier* only, and that these sections do not mean that only interstate shipments shall be made. It can readily be seen that the legislature, for police regulation, would restrict the means of transportation to *common carriers.*

If section 2 of the act of 1917 is ambiguous or susceptible to two constructions, I am willing to presume that the legislature of this State, when authorizing the sale and use of pure alcohol within this State, as it does in section 2 of the act of 1917 and the act of 1907 there ratified, intended to discriminate against its own wholesale druggists in favor of those of other States by denying the means of transportation to the former while permitting the same to the latter. For this reason, if the language of the act does not imperatively demand the view taken by my colleagues in the majority opinion, I must give to section 2 a construction that will permit the citizens of this State to do business within this State on an equal footing with citizens of other States. However plausible may be the view taken in the majority opinion, it curtails the rights and privileges of the common carriers and citizens of this State. It is in derogation of the common law and common right. Sound judicial policy, therefore, precludes any such construction upon a purely statutory enactment, unless its unambiguous terms imperatively so demand.

The act of 1907 (Penal Code, § 426-430, inclusive) provides that pure alcohol may in wholesale quantities be furnished by "wholesale druggists" to "regular licensed retail druggists" and others. It seems to be conceded in the arguments and briefs that the shipment as made by the defendant carrier in this case was a wholesale shipment as provided in the act of 1907. However that may be, in my opinion the act of 1907 is to be construed as recognizing pure alcohol in excess of one pint as "wholesale quantities." Therefore, when transported in wholesale quantities as authorized by the act of 1907, as declared and reaffirmed by the act of 1917, such alcohol must be shipped from one authorized by the act of 1907 to sell or furnish it, viz., a "wholesale druggist" within this State, to one authorized to receive it within this State.

Did the Southern Express Company, a common carrier, ship or transport a consignment of pure alcohol in wholesale quantities from and to such persons as is provided by law? The shipment

was without doubt received from one authorized to ship under the act of 1907, namely, a "wholesale druggist," but whether it was transported by the defendant to one who was authorized to receive it is not quite so clear. It was consigned to one Dr. H. G. Fussell, at Camilla, Ga., a person who, it subsequently appears, was not within the class authorized to receive such shipments. It would seem that, in order to defend against a criminal charge of transporting prohibited liquors between points within this State, it must appear that a wholesale shipment of pure alcohol was received for transportation by the defendant carrier from one authorized to ship it under the law, such as a wholesale druggist, and it must appear that said carrier transported the same only for the purpose of delivering it to one authorized to receive it. There being nothing to put the defendant carrier on notice that said shipment was not consigned to a person authorized to receive it under the law, there could in this respect be no blame attached to the defendant carrier, in the absence of an intent on its part to haul such shipment to an unauthorized person. Upon the seizure of the alcohol by the sheriff before the delivery of the same to the consignee by the defendant carrier, the defendant's further responsibility ceased, and, without more, the defendant carrier did not violate any criminal statute of this State.

The Southern Express Company, defendant in this case, a common carrier, having received a wholesale shipment of pure alcohol from a wholesale druggist within this State, for the purpose of transporting the same to another point within this State, and with the intention to there deliver it to a person authorized to receive it, acted within its legal rights and violated no criminal law. The conviction, therefore, under the first count in the indictment was contrary to law. The possession of such alcohol being necessary to its transportation, which transportation was not criminal, but in accordance with law, such possession by said common carrier was perfectly legal, and a conviction cannot be sustained under the second count of the indictment. I am of the opinion that the judgment should be reversed.