BAGDAD LAND AND LUMBER COMPANY v. LOUISVILLE AND NASHVILLE RAILROAD COMPANY.

172 So. 851.

Opinion Filed February 17, 1937.

Rehearing Denied March 15, 1937.

*A. Morley Darby,* for Plaintiff in Error;
*Carter & Yonge,* for Defendant in Error.

TERRELL, J.—Louisville and Nashville Railroad Company brought this action against Bagdad Land & Lumber Company to recover wharfage charges for loading lumber from barges or lighters to vessels lying along its (plaintiffs) wharves. A demurrer to the declaration was overruled, a plea of not guilty was entered, and on the issue thus made final judgment was rendered for the plaintiff on an agreed stipulation of facts, a jury having been waived. A new trial was denied and writ of error taken to the judgment.

The pertinent part of the agreed stipulation was in substance as follows: Louisville and Nashville Railroad Company was at the time of this action and had been for many years, a common carrier of interstate, intrastate, and foreign freights and traffic of all kinds, including lumber and timber, its lines extended into Florida and other states, it owned at Pensacola, Florida, a large and extensive wharf, extending from the shore into the waters at Pensacola Bay, constructed and maintained by it at an expense of many thousands of dollars, and used for shipping in connection with its railroad line which was built over said wharf, that with government permission at a cost of many thousands of dollars plaintiff dredged long, deep, and wide channels or slips by the side of said wharf, and extended said slips to the channel of Pensacola Bay by means of which access to and from the wharf and between the wharf and the chan-

nel·of the bay was afforded to large ocean going vessels and to vessels and other water craft for loading, unloading, handling, and transportation of freights and traffic of all kinds and by the same means safe berths and anchorage was secured to such ships and vessels and water craft while so· engaged.

Said slips were with government permit redredged from time to time and were continuously maintained by and kept in good condition at large expense by plaintiff, which was not necessary to permit the barges of defendant to come alongside vessels lying at the wharf, but was necessary to let vessels which loaded there to come and lie alongside of and be fastened to the wharf to be loaded with lumber and timber by defendant from its barges and lighters.

During the years 1933 and 1934 when this action was brought and for years prior thereto, defendant was engaged in manufacturing, selling, and shipping in interstate and in-·trastate, and foreign commerce, large quantities of lumber and timber by delivery to ships and vessels at Pensacola. Such delivery was made by defendant from lighters and barges which during the process of unloading and delivery of the lumber and timber were lying alongside of and fastened to ships and vessels which were lying at the time in the slips so dredged and maintained along said wharf and were fastened by ropes and chains to said wharf, but the lighters, barges and rafts so unloaded were not fastened in any manner to nor did they come in actual contact with said wharf while unloading, but were then fastened to the ships on the waterside, which ships were moored in the slips alongside of and in contact with and fastened to said wharf.

Plaintiff performed no other service in connection with the transportation and loading of said lumber and timber and was not liable to defendant for loss·or damage to its

goods or lighters unless for some wrongful act on its part. The ships receiving the lumber paid defendant their tariff dockage charge for mooring at the wharf, but paid nothing for lumber and timber loaded by defendant and other ship-pers. Prior to 1933 plaintiff had fixed and put in effect wharfage charges of twenty cents per ton of two thousand pounds for loading lumber and timber from its wharf. Defendant knew these charges were in effect in 1933 and 1934 when it loaded the lumber and timber for which the charges herein are sought to be collected and knew it would be expected to pay them, but now denies the plaintiff's right to collect them.

The single question we are called on to answer is whether or not plaintiff can collect a wharfage charge for the use of its wharfing or docking facilities under the facts stated.

Plaintiff in Error does not challenge the reasonableness of or the amount of the charge, but refuses to pay because there is no statutory or other authority for collecting it. Reliance is placed on Robertson v. Wilder & Co., 69 Ga. 340; Stephen v. Costor, 3 Burrows' Reports 1409; People v. Roberts (Cal.) 25 Pac. 496, and like cases to support this contention.

These cases have been examined and they are not controlling in this case because they are all predicated on statutes defining public wharfage and fixing charges therefor. They relate to public wharfs, while we are here concerned with charges for a private wharf.

In the case at bar the status of the wharf in question is fixed as private by Act of the Legislature. Chapter 4802, Acts of 1899. It is admitted that no charge has been fixed for the use of it by any legislative body unless such a charge may be imposed by the Railroad Commission under Sub-

section Ten, Section 6703, Compiled General Laws of 1927, which has not been done.

The authorities generally recognize the right of a private wharf owner to charge for the use of his wharfing and docketing facilities even when the goods are loaded from barges to ships moored in slips alongside of and fastened to the wharf. Beard v. Marine Lighterage Corp., 296 Fed. 146, 148; The Kate Tremain, 14 Fed. Case 7622; People v. Roberts (Cal.) 25 Pac. 496; Robinson v. Wilder, 69 Ga. 340; 28 R. C. L. 39; 68 C. J. 215.

We have found no cases dealing with facts such as we have here that have not recognized a reasonable charge as valid and even in cases where the wharf is used without an express agreement the law implies one to pay just and reasonable charges. Seeligson v. Taylor Compress Co., 56 Tex. 219; Southern Steamship Co. v. Sparks, 22 Tex. 657; Steamboat Magnolia v. Marshall, 39 Miss. 109; Beard v. Marine Lighterage Corp., 296 Fed. 146; Ex Parte Easton, 95 U. S. 68, 24 L. Ed. 373.

Such charges may be regulated by legislative fiat, but until that is done the owner, as was done in this case, may impose a reasonable charge and enforce its collection.

This conclusion leads to an affirmance of the judgment below, which is hereby ordered.

Affirmed.

ELLIS, C. J., and WHITFIELD and BROWN, J. J., concur.

DAVIS, J., dissents.

BUFORD, J., not participating on account of illness.

DAVIS, J. (dissenting).—The right upheld by a majority of the Court in this case is the right to collect wharfage charges when no such service is rendered. The right to collect wharfage is a franchise existing as an incident to the ownership of land abutting upon navigable waters, as a

riparian right. The right to collect wharfage is altogether dependent upon the furnishing of increased facilities *for use* in shipping. City of Shreveport v. Red River & Coast Line, 37 La. Ann. 562, 55 Am. Rep. 504. It is a charge for the *use of* special shipping facilities actually provided and used by the shipper, and not a right to collect a tariff toll upon goods that might have been wharfed, but which were loaded on ship without the use of special facilities.

In order that a right to collect wharfage charges may exist absent a statute providing some other rule, there must be provided a berth for the vessel and a place of deposit for the vessel's cargo upon which the wharfage is demanded. The occupation by defendant's lighters and barges, by anchorage or otherwise, of that part of the navigable water alongside ship that was open to all, although in the vicinage of the vessel moored to the plaintiff's wharf, implies no contract or liability for wharfage where there is no use of the wharf itself by such lighters or barges, for the landing or for the reception of goods or passengers.

This case is controlled entirely by the Common Law. The English case of Stephen v. Costor, 3 Burrows Rep. 1409, established the common law rule to the effect that "duty of wharfage and cranage cannot be due where the party has not had the use of the wharf or the crane" and that "wharfage is duty for loading *on* a wharf," and does not (in the absence of a statute so enacting) entitle the wharfinger to collect wharfage on such part of the vessel's cargo put on board to or from lighters and loaded or carried away from the vessel without having been landed upon the wharf at all.

The American case of Robertson v. Wilder, 69 Ga. 340, text 343, follows the foregoing English Statement of the common law, and holds that the wharfinger cannot exact

a "landing" or "shipping" traffic toll where goods are put on a vessel from barges or lighters not fastened to the wharf at all, and making no use of it as such. The mere fact that shippers load vessels in such manner as to avoid the necessity of using a wharf for the purpose no more entitles the wharfinger to collect for wharfage under the circumstances than Tallahassee taxi drivers are entitled to collect taxi fees from those who elect to walk to the railroad station in order to avoid the employment of a taxicab.

The lumber for which the wharfage was claimed in this case was not landed to or from the lighters or barges on any part of the plaintiff's wharf, but was loaded directly from a lighter or barge lying alongside ship on the navigable water side of the vessel moored to plaintiff's dock, for which mooring a separate charge was made and collected by plaintiff as dockage fee. To hold defendant liable for wharfage under such circumstances is to ignore the rationale of this Court's own decision in Frater v. Baylen Street Wharf Co., 57 Fla. 63, 49 Sou. Rep. 188, 131 Am. St. Rep. 1084. Therefore, I cannot concur in the majority opinion which converts the wharfage fee from a service charge to a toll and thereby runs counter to our own cited decision last mentioned.